**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOEL ANTHONY ALLEN,

      Petitioner,            Civil No. 2:08-CV-10403
                               HONORABLE DENISE PAGE HOOD
v.                          CHIEF UNITED STATES DISTRICT JUDGE

RANDALL HAAS,

      Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF**
**HABEAS CORPUS AND DENYING A CERTIFICATE OF**
**APPEALABILITY**

Joel Anthony Allen, ("Petitioner"), confined at the Macomb

Correctional Facility in New Haven, Michigan, filed a petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254, through his attorney John

Minock, challenging his conviction for first-degree premeditated murder,

M.C.L.A. 750.316, and several counts of assault with intent to commit

murder, M.C.L.A. 750.83.  For the reasons that follow, the petition for writ

of habeas corpus is DENIED.

**I.  Background**

Petitioner was convicted following a jury trial in the Wayne County

Circuit Court, in which he was tried jointly with his co-defendant Willie

1

James Robinson, but with separate juries. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).

*See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendants' convictions arise from a drive-by shooting in which a seven-year-old girl was killed and her mother and siblings were wounded. The injured victims were inside a parked car when they were shot. There was no dispute at trial that defendant Allen drove defendant Robinson's car while Robinson repeatedly fired an automatic carbine rifle. Robinson's theory at trial was that he did not intend to kill anyone, and was shooting at the car in retaliation for an earlier confrontation in which his car was struck with a baseball bat. Allen's theory was that he did not know that Robinson was going to shoot at anyone.

> The events that culminated in the shooting began with Donnell Brown's sale of a car stereo, either to Robinson or Robinson's friend, for $40, which allegedly was paid for with counterfeit money. Although the facts surrounding the sale and the ensuing confrontation over the counterfeit money were disputed, at some point, Anthony Niebrzydowski ("Blue") became involved, and either he or Brown threw a bat that struck Robinson's car. Allen was with Robinson during this argument, which was witnessed by Blue's sister, Aelizabeth Niebrzydowski ("Niebrzydowski"). Robinson left, but threatened retaliation.

> Approximately thirty minutes later, Robinson and Allen returned. Niebrzydowski and her three daughters were in Blue's girlfriend's car to go shopping. The car was parked at an angle and was partially on the grass and partially on the driveway, with the back end of the car nearly in the street. The passenger door was open. The girls' brother, "B.J.," approached the car with Blue. Brown was sitting on the porch. Robinson's car came around the corner. Allen was driving, and Robinson was firing the gun. Brown ran

inside the house.   The car was showered with bullets.
Niebrzydowski's left index finger was hit as it was on the steering
wheel and a bullet also grazed her behind her ear on the right
side.  One daughter was killed by a gunshot to her head.  Two of
Niebrzydowski's other daughters and B.J. received nonfatal
wounds.

Robinson admitted the shooting, but denied knowing that anyone
was inside the car.  In his statement to the police, Robinson said,
"When we turned onto Dolphin I saw Blue standing next to a white
car that was parked in the yard.  When I saw Blue I began firing
at the car."  He claimed that he fired the weapon about eight
times.  When asked, "Did you see anyone inside the vehicle when
you shot at [B]lue," Robinson responded, "No. Blue was standing
on the outside by the passenger side.  I was shooting at the car."

*People v. Allen*, No. 246419, 2004 WL 2290483, at *1 (Mich. Ct. App.
Oct. 12, 2004).

In addition to this evidence, Mario Godfrey testified that he received a

telephone call from petitioner on February 25, 2002 at about 12:30 p.m.

Petitioner informed Godfrey that Brown and Blue attempted to "jump" Mr.

Robinson and that "then we did a drive by."  On cross-examination, Mr.

Godfrey admitted that in his statement to the police he did not inform them

that petitioner said that the men had done a drive-by shooting, but instead

told the police that petitioner said that his co-defendant "shot up the car."

(Tr. 8/21/02, pp. 156, 168).

Petitioner's conviction was affirmed on appeal. *People v. Allen*, No.

246419, 2004 WL 2290483 (Mich. Ct. App. Oct. 12, 2004); *lv. den.* 477

3

Mich. 903, 722 N.W. 2d 793 (2006).

Petitioner filed a petition for writ of habeas corpus, which was held in in abeyance to permit petitioner to return to the state courts to exhaust additional claims.  The Court also administratively closed the case. *Allen v. Wolfenbarger*, No. 08-10403, 2010 WL 3397338 (E.D. Mich. Aug. 27, 2010).

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. Seq.,* which was denied. *People v. Allen,* No. 02-003922 (Third Jud.Cir.Ct. Nov. 26, 2013).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Allen*, No. 321298 (Mich.Ct.App. May 28, 2014); *lv. den.* 497 Mich. 953, 858 N.W.2d 427 (2015); *reconsideration denied*, 497 Mich. 1031, 863 N.W.2d 46 (2015).

On July 12, 2016, this Court granted petitioner's motion to lift the stay and his motion to amend his habeas petition.

In his amended habeas petition, petitioner seeks habeas relief on the following grounds:

> I. Petitioner was denied his constitutional right to due process where the trial court erred in instructing the jury regarding the intent and temporal requirements for aiding and abetting first-degree murder, the key issues in the case.   The ineffectiveness of trial counsel and appointed appellate counsel excuse   the   procedural   defaults   of   failure   to   make   a

4

contemporaneous objection and failure to develop the record on direct appeal.

II. The prejudicial conduct of the trial judge during trial denied Petitioner due process and a fair trial.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.  A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

6

### III.  Discussion

### A.  The statute of limitations issue.

Respondent first contends that petitioner's amended petition is barred by the Antiterrorism and Effective Death Penalty Act's (AEDPA) statute of limitations found in 28 U.S.C. § 2244(d)(1).  Respondent contends that the petition is untimely because petitioner did not return to the state courts to file his post-conviction motion for relief from judgment within a reasonable time after this Court held his petition in abeyance nor did he file his motion to lift the stay within a reasonable time of the Michigan Supreme Court denying petitioner's post-conviction appeal. Respondent further argues that the claims raised by petitioner in his amended petition are untimely because the amended petition was filed after the one year limitations period had expired and the claims contained in his amended petition do not relate back to the claims raised in his original petition.

Regarding respondent's first argument, respondent acknowledges that the opinion and order holding the petition in abeyance did not give petitioner any deadlines with which to return to the state courts to exhaust his claims and to return to this court following the exhaustion of such

7

claims.  In light of the fact that this Court failed to set such deadlines, this Court believes that it would be unfair to rule that petitioner had somehow not complied with the terms of the stay.

Respondent's second argument is also without merit.  When a habeas petitioner files an original petition within the one-year deadline, as petitioner did here, and subsequently presents new claims in an amended petition that is filed after the one year limitations period expired, the new claims relate back to the date of the original petition if the new claims share a "common core of operative facts" with the original petition. *See Mayle v. Felix*, 545 U.S. 644, 664 (2005).

Petitioner's amended habeas petition contains two of the same claims that he raised in his original petition, with the addition of a claim that appellate counsel was ineffective for not properly raising on petitioner's appeal of right the instructional error and ineffective assistance of trial counsel claims that petitioner raised in his original petition.  The Court denies respondent's motion to dismiss because petitioner's ineffective assistance of appellate counsel claim shares the same common core of operative facts as the claims raised in petitioner's original habeas petition concerning the defective jury instruction and ineffective

8

assistance of trial counsel claims. *See Cowan v. Stovall,* 645 F.3d 815, 819 (6th Cir. 2011).

In any event, the statute of limitations does not constitute a jurisdictional bar to habeas review.  A federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F. 3d 426, 429, n. 2 (6th Cir. 2006)(quoting *Trussell v. Bowersox,* 447 F. 3d 588, 590 (8th Cir. 2006)). This Court need not resolve the dispute over the timeliness of petitioner habeas application.  Assuming that the current petition was timely, petitioner's habeas application fails on the merits. *See Ahart v. Bradshaw,* 122 F. App'x. 188, 192 (6th Cir. 2005).

**B.  Claim # 1.  The defective jury instruction/ineffective assistance of counsel claim.**

Petitioner first contends that the jury instructions on aiding and abetting were inaccurate and misleading because they gave conflicting instructions regarding the specific intent required to be convicted as an aider and abettor and also because the instructions failed to distinguish between being an aider and abettor to an offense and being an accessory after the fact.  Petitioner further contends that his trial counsel was ineffective for failing to object to the defective jury instructions and his

9

appellate counsel was ineffective for failing to develop a record on

petitioner's appeal of right regarding the claim. [1]

The judge initially gave the jury the following instruction on aiding

and abetting:

> Now, I've stated to you that Murder in the First Degree, and also
> Assault with Intent to Commit Murder are what we call specific
> intent crimes.
>
> At the time of giving the assistance, the aider and abetter must
> either have the intent himself to kill the victim, or to assault with
> intent to commit murder.
>
> He must either have that intent himself, or he must aid and abet
> another person, knowing that that person intends to kill, or
> intends to do great bodily – intends to kill, or kills another person.
> In other words, the aider and abetter either intends himself, or he
> knows that the person that he is assisting *intends to do the act.*
>
> (Tr. 8/23/02, pp. 82-83)(emphasis added).

After the jury was excused, but before it began deliberations,

defense counsel objected to the jury instruction as being ambiguous with

respect to the issue of the specific intent required to convict petitioner

under an aiding and abetting theory.  The judge agreed to give a clarifying

---

[1]  Respondent contends that petitioner's jury instruction claim is procedurally defaulted because his trial counsel failed to object at trial.  Petitioner claims that trial counsel was ineffective for failing to object to the defective instruction.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

instruction to the jurors. The judge gave the following instruction to the

jury:

> The specific intent in the first count of Murder in the First Degree, is that the perpetrator specifically intended to kill the victim. And that the aider and abetter [sic] knew that the perpetrator specifically intended to kill the victim.
>
> As to Murder in the Second Degree, which is an alternative in Count 1, in Murder in the Second Degree, you can either intend to kill, or intend to do great bodily harm, or just create a dangerous situation, knowingly create a dangerous situation, in total disregard that the likelihood would be to cause death or bodily harm. So, that's not-you don't have to specifically intend to kill anybody. All right?
>
> And as to the other counts of Assault with Intent to Commit Murder, it's also a specific intent to kill the victim. Specific intent to kill the victim. Either the perpetrator-the perpetrator had the specific intent. The aider and abetter [sic] either had that intent, also, or he knew that the other person intended to [sic] something.
>
> Either the perpetrator – the perpetrator had the specific intent. The aider and abetter either had that intent, also, or *he knew that the other person intended to something.*
>
> On the Felonious Assault the intent is to put the victim in fear, and not to cause the death of the person
>
> (*Id.*, p. 89)(emphasis added).

During deliberations, the jury requested a definition of aiding and

abetting. The judge read the aiding and abetting statute to the jury, read

an instruction on mere presence, and gave a hypothetical example

11

regarding a person who was not present at the scene aiding and abetting

a burglary twenty miles away by providing the combination to a safe. (*Id.,*

pp. 92-93).

The Michigan Court of Appeals rejected petitioner's claim:

Allen concedes that in this case, upon reinstruction, the court
correctly instructed the jury with regard to the intent necessary for
conviction on an aiding and abetting theory, but argues that at
the conclusion of the reinstruction, the court gave a contradictory
instruction. He argues that the court's instruction that Allen could
be convicted if he knew that the other person intended "to
something" was error requiring reversal. We disagree.

Allen objected to the initial instructions on the ground that the
court made an erroneous statement concerning specific intent by
referring to specific intent to "do the act" because the aider and
abettor had to have the specific intent "to kill" or must have
known that the other person had the specific intent to kill. On
reinstruction, the court properly instructed the jury with regard to
first-degree murder, stating that the jury must find that the
perpetrator specifically intended to kill the victim and that the
aider and abettor knew that the perpetrator specifically intended
to kill the victim. The alleged misstatement occurred between the
assault with intent to commit murder instruction and the felonious
assault instruction, after the first-degree murder instruction, which
Allen does not challenge as incorrect. The misstatement
arguably did not pertain to first-degree murder, of which
defendant was convicted, and any error therefore could not have
affected Allen's substantial rights because the jury found that
Allen had the requisite intent for first-degree murder.

In any event, any misstatement by the court was minor in light of
the lengthy and repetitive instructions concerning the specific
intent requirement. The court instructed the jury that first-degree
murder is a specific intent crime and that "the person must

specifically intend to kill someone" and that "there must be an intent to kill, premeditation, and deliberation." The court distinguished between first-degree murder and second-degree murder. The court also repeatedly instructed that assault with intent to commit murder required the specific intent to kill, such that if the person had died it would be murder in the first degree:

> Any person who shall assault another person and intend to commit the crime of murder, if the person had died then the crime would be Murder in the First Degree.

> The court repeatedly stated that first-degree murder and assault with intent to commit murder were specific intent crimes, and at the time of giving assistance, the aider and abettor must either have had the intent himself to kill the victim or to assault with intent to commit murder or must have aided and abetted another person knowing that that person specifically intended to kill the victim. Even if somewhat imperfect, we conclude that the instructions on the whole fairly presented the issues to be tried and sufficiently protected the defendant's rights. Defendant has failed to show that any error affected his substantial rights.

*People v. Allen*, 2004 WL 2290483, at *3–4 (internal citations omitted).

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an

omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191. Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

In determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction had a substantial and injurious effect or influence on the jury's verdict. *See Hedgpeth v. Pulido,* 555 U.S. 57, 61-62 (2008); *California v. Ray,* 519 U.S. 2, 5 (1996).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

14

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007)(citing *People v. Carines*, 460 Mich. 750, 757-58; 597 N.W. 2d 130 (1999)).

In order to be convicted under Michigan law of first-degree premeditated murder under an aiding and abetting theory, the prosecutor is required to prove that at the time of the killing the defendant either had the premeditated and deliberate intent to kill the victim or that he or she participated knowing that the co-defendant possessed this specific intent. *Puckett v. Costello*, 111 F. App'x. 379, 382 (6th Cir. 2004)(*quoting People v. Youngblood*, 165 Mich.App. 381, 418 N.W.2d 472, 475 (1988)). Likewise, in order to convict a defendant of assault with intent to commit murder under an aiding and abetting theory, the prosecution is required to prove either that defendant specifically intended to kill the victim or victims or that he or she was aware that his or her co-defendant specifically intended to kill the victim or victims. *See e.g. Warren v. Smith*, 161 F.3d 358, 361–62 (6th Cir. 1998).

15

The Sixth Circuit has "denied habeas relief when an arguably confusing instruction on accomplice liability was coupled with additional language, which required the jury to find that the defendant had the appropriate mental state." *Parham v. Warren*, 490 F. App'x. 686, 692 (6th Cir. 2012)(*citing O'Neal v. Morris*, 3 F.3d 143, 146–47 (6th Cir.1993), *vacated on other grounds sub nom. O'Neal v. McAninch*, 513 U.S. 432 (1995)(discussing standard of review, not whether jury instruction was erroneous)). When viewed in their entirety, the jury instructions adequately informed the jury that in order to convict petitioner of first-degree murder and assault with intent to murder on an aiding and abetting theory, they would have to find that he had either the specific intent to kill the victims or assisted his co-defendant with the knowledge that his co-defendant possessed the requisite intent. Petitioner is not entitled to habeas relief on his first instructional error claim. *Id., See also Thompson v. Konteh,* 170 F. App'x. 945, 952 (6th Cir.2006) (aiding-and-abetting instruction not confusing when considered within context of other instructions).

Petitioner next contends that the instructions were defective because they failed to distinguish between being an aider and abettor and being an

accessory after the fact.

Under Michigan law, an "accessory after the fact" is a person who, with knowledge of the other person's guilt, renders assistance to that person in an effort to hinder his detection, arrest, trial, or punishment. *Cathron v. Jones,* 190 F. Supp. 2d 990, 1000 (E.D. Mich. 2002)(*citing People v. Lucas*, 402 Mich. 302, 304; 262 N.W.2d 662 (1978)). "Accessories after the fact, by definition, do not participate in the charged offense either as a principal or as an aider or abettor, and they do nothing in furtherance of the offense before or while it occurred." *Id.* (*citing People v. Perry*, 218 Mich.App. 520, 534, 536 n. 3; 554 N.W. 2d 362 (1996)).  An accessory after the fact "has no causal role in the principal offense." *Id.*

The Michigan Court of Appeals rejected this claim:

> Although the court did not specifically instruct that an aider and abettor's assistance must be rendered before or during the commission of the crime, see CJI2d 8.1(3)(b), the court instructed the jury that the aider and abettor "must do some act which assists, encourages, or aids and abets another party *in the commission of an offense.*" (Emphasis added).  The court's instruction was sufficient to convey that assistance after the commission of an offense will not suffice to establish guilt under an aiding and abetting theory.

> *People v. Allen*, 2004 WL 2290483, at * 4.

In the present case, the judge's instruction that the aider and abettor "must do some act which assists, encourages, or aids and abets another party in the commission of an offense" was sufficient to distinguish being an aider and abettor from being an accessory after the fact, so as to preclude habeas relief for petitioner. *See e.g. Bell v. Jackson*, 379 F. App'x. 440, 448–49 (6th Cir. 2010).

Petitioner further contends that he was denied the effective assistance of trial and appellate counsel regarding the defective jury instruction.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.

18

*Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

Importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*,

19

556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner contends that his trial counsel was ineffective for failing to object to the trial court's inadequate aiding and abetting instruction.

As an initial matter, this Court notes that trial counsel did object to

20

the initial jury instructions as given as being ambiguous with respect to the issue of the specific intent required to convict petitioner under an aiding and abetting. The judge agreed to give a clarifying instruction to the jurors, which adequately explained the issue of specific intent required to convict petitioner of being an aider and abettor. Because counsel did, in fact, object to the trial court's instruction, petitioner's ineffective assistance of counsel claim is without merit. *See e.g. Durr v. Mitchell,* 487 F.3d 423, 440 (6th Cir. 2007).

To the extent that petitioner argues that trial counsel should have objected to the supplemental jury instructions or should have objected to the judge's failure to adequately distinguish aider and abettor liability from the offense of accessory after the fact, he would not be entitled to relief. The jury instructions as a whole adequately explained the specific intent required to prove the crime of aiding and abetting first-degree murder and assault with intent to commit murder and also adequately distinguished between being an aider and abettor and an accessory after the fact. Trial counsel was not ineffective for failing to object to the instructions. *See e.g. Campbell v. Coyle,* 260 F. 3d 531, 557 (6th Cir. 2001). Because the instructions as given on aider and abettor liability were adequate,

21

counsel's failure to object was not objectively unreasonable, and petitioner cannot show that a different instruction would likely have changed the outcome of his trial as to entitle him to habeas relief on his claim. *See Jacobs v. Sherman,* 301 F. App'x. 463, 466-67 (6th Cir. 2008).

Petitioner further claims that his appellate counsel was ineffective for failing to move for an evidentiary hearing on his ineffective assistance of trial counsel claim pursuant to *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973) and M.C.R. 7.211(C)(1).

Petitioner is not entitled to relief for several reasons.

Petitioner's original court-appointed attorney was replaced by Mr. Minock, who was retained by petitioner to represent him on his appeal of right.  Although Mr. Minock did not file a separate motion for a *Ginther* hearing, he did request an evidentiary hearing on petitioner's ineffective assistance of trial counsel claim in the body of his appellate brief. Although it may be a "best practice" for an appellate attorney to file a separate motion under MC.R. 7.211(C)(1) when he or she determines that development of a factual record is required for appellate consideration of the issue, it is not necessarily deficient performance to not do so. See, e.g., *People v. Henry*, Nos. 306449, 308963, 2013 WL 6331731, n. 1

22

(Mich. Ct. App. Dec. 13, 2013)("There is nothing in the court rules to suggest that defendant may not request a remand in an appellate brief under MCR 7.212(C)(8). Moreover, irrespective of whether defendant requested a remand, MCR 7.216(A)(5) and (7) provides this Court with the authority to remand for an evidentiary hearing without a motion from defendant."); *People v. Moore*, No. 303750, 2013 WL 1500886, n.2 (Mich. Ct. App. April 11, 2013)("[W]e recognize that there is nothing in the court rules to suggest that a defendant may or may not simply request a remand in an appellate brief under MCR 7.212(C)(8).").

Secondly, appellate counsel's decision to raise the ineffective assistance of trial counsel claim without conducting an evidentiary hearing may have been a "reasonable recognition that the allegations of ineffective assistance could be determined from the trial transcript alone. No additional evidence was really necessary for the [appellate] court to make a fair determination of the sixth amendment issue." *Young v. Miller,* 883 F. 2d 1276, 1280 (6th Cir. 1989).

Thirdly, in light of the fact that petitioner's ineffective assistance of trial counsel claim is without merit, petitioner is unable to establish that he was prejudiced by appellate counsel's failure to conduct a *Ginther* hearing.

23

See e.g. *Davis v. Booker,* 594 F. Supp. 2d 802, 831 (E.D. Mich. 2009);

*rev'd on other grds,* 589 F. 3d 302 (6th Cir. 2009).  Petitioner is not entitled

to relief on his first claim.

### C.  Claim # 2.  The judicial misconduct claim.

Petitioner next contends that he was denied a fair trial because of

prejudicial conduct on the part of the trial judge.

The Due Process Clause of the Fourteenth Amendment requires a

fair trial in a fair tribunal before a judge with no actual bias against the

defendant or an interest in the outcome of the case. See *Bracy v.*

*Gramley*, 520 U.S. 899, 904-05 (1997).  However, to state a claim that a

judge is biased, a defendant must show either actual bias or the

appearance of bias creating a conclusive presumption of actual bias.

*United States v. Lowe*, 106 F. 3d 1498, 1504 (6th Cir. 1997).  "Under this

standard, '[o]nly in the most extreme of cases would disqualification on the

basis of bias and prejudice be constitutionally required.'" *Getsy v. Mitchell,*

495 F.3d 295, 311 (6th Cir. 2007)(quoting *Williams v. Anderson*, 460 F.3d

789, 814 (6th Cir. 2006)).  Trial judges have a wide latitude in conducting

trials, but they must preserve an attitude of impartiality and scrupulously

avoid giving the jury the impression that the judge believes that the

24

defendant is guilty. *Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997); *Brown v. Palmer,* 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

However, in reviewing an allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *Brown v. Palmer,* 358 F. Supp. 2d at 657.  To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. *Brinlee v. Crisp*, 608 F.2d 839, 852-53 (10th Cir. 1979); *Brown,* 358 F. Supp. 2d at 657.  A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *Brown,* 358 F. Supp. 2d at 657.

The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias

25

or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).  "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id.*

Petitioner argues that the judge "acted as a second prosecutor" and several times interrupted defense counsel's cross-examination of witnesses and made his own "objections" to defense counsel's questioning.

Officer Staples took a statement from petitioner and also took into evidence a videotape from a nearby surveillance camera.  During defense counsel's cross-examination of Officer Staples, the judge interrupted defense counsel:

> Q: [defense counsel] You didn't think it was important to look at that tape before you talked to Mr. Allen?
>
> THE COURT: Well, he's answered that he – that's argumentative. He's answered that he didn't look at any tape. You know. So, anything about whether he thought it was important is not relevant. He said he did not look at any video tape.
>
> (Tr. 8/20/02, p. 24).
>
> During the re-cross of Jason Pollard, the judge again interrupted:
>
> Q: [defense counsel]: When you testified in your direct

examination you said that when you talked to Joel he just said, "No, he didn't", and he hung up.

THE COURT: Mr. Cunningham, he's already answered that question a hundred thousand times.

(*Id.*, pp. 73-74).

A short time later, the judge again interrupted and terminated

defense counsel's recross of Pollard:

Q: [defense counsel]: I see. But when the Prosecutor asked you questions you say yes –

THE COURT: No, no, that's argumentative. That is argumentative. You can ask this man a question. You've asked him, he's answered your question. He said he was dropped off. He said that already. Is there anything else you want to ask?

BY MR. CUNNINGHAM [petitioner's defense counsel]:

Q: And that came during the telephone conversations that you had with Joel, where you called that number?

A: [Mr. Pollard]: Yes.

Q: All right. So, there was some information that Joel gave. What other information–

THE COURT: Step down.

MR. CUNNINGHAM: What other information –

THE COURT: Step down. Thank you. (Witness excused at 10:54 A.M.) Call your next witness. And the record will indicate that the same questions and answers are being asked over. And I don't think I should plague the jury with having to hear the same – over

27

and over and over again. It's repetitive. It's not getting us anywhere. Call your next witness.

(*Id.*, pp. 75-76).

When both defense attorneys tried to make objections to hearsay statements made by the other defendant, the judge admonished both counsel in front of the jury and labeled the objections as a "performance.":

Q: [defense counsel]; Oh, I see. So no he says that – what did he say?

A: He (Joel Allen) said Will dropped him off.

Q: I see. Now, --

MR. BARNETT [the co-defendant's attorney]: Your Honor, I'm just going to make one objection on this hearsay. I ask that the Court stop hearsay statements, and I –

THE COURT: Well, these questions are solicited by Defense Counsel.

MR. BARNETT: I don't care who they're solicited by, they're hearsay.  And I don't know of any rule that allows hearsay in this court. I just made my objection. Hearsay.

THE COURT: Thank you, Mr. Barnett.

MR. CUNNINGHAM: I agree with Mr. Barnett, these are –

THE COURT: Well –

MR. BARNETT: This is hearsay. This is wrong, and what's happening here. And we're made to look like the bad guys, when I'm enforcing rules of law.

28

MR. KING [the assistant prosecutor]: Your Honor, I object.

MR. HAUGABOOK [the co-prosecutor]: Your Honor, I object to that.

MR. BARNETT: I want a ruling. Is it hearsay or not?

THE COURT: Are you done with your performance, now?

MR. BARNETT: Yes, I'm done with my performance. Can I have a ruling?

THE COURT: Would you please be seated, Mr. Barnett.

(*Id.*, pp. 59-60).

During the prosecutor's direct exam of Desmond Reed, defense counsel made an objection. The judge criticized counsel, in front of the jury, for making a "closing statement." (Tr. 8/21/02, pp. 158-59).

The judge's admonitions to counsel were nothing more than efforts at courtroom administration and thus do not demonstrate bias on the judge's part. In this case, "The reprimands were not out of line, nor were they substantially adverse to [petitioner] himself. There is no showing that the trial judge ever intimated his opinion on the merits of the case." *See Todd v. Stegal,* 40 F. App'x. 25, 27 (6th Cir. 2002). Although the judge's sarcastic remarks were inappropriate, they were isolated. In light of "the very high standard articulated in *Liteky*" to obtain relief on a judicial

29

misconduct claim, the Michigan Court of Appeals' rejection of petitioner's claim was not unreasonable, so as to entitle petitioner to habeas relief. *Brandt v. Curtis*, 138 F. App'x. 734, 743 (6th Cir. 2005).

Petitioner also claims that the judge engaged in "lengthy diatribes" with Mr. Robinson's lawyer, citing to more than twenty instances of alleged misconduct.  As the Michigan Court of Appeals indicated in rejecting petitioner's claim, *Allen*, 2004 WL 2290483, at * 6, the trial judge's remarks to co-defendant's attorney which had nothing to do with petitioner could not have been prejudicial as to petitioner. *See United States v. Middleton*, 458 F.2d 482, 483 (5th Cir. 1972).

Given the evidence presented on this claim, this Court cannot conclude that the trial court judge's comments rendered the trial fundamentally unfair, nor does the Court find that the Michigan Court of Appeals' decision on this issue was contrary to or an unreasonable application of Supreme Court precedent, as to warrant habeas relief. *See Higgins v. Renico,* 362 F. Supp. 2d  904, 924 (E.D. Mich. 2005).

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [2] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

---

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

IT IS FURTHER ORDERED That a certificate of appealability is

**DENIED.**

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  November 30, 2016

I hereby certify that a copy of the foregoing document was served upon
counsel of record on November 30, 2016, by electronic and/or ordinary
mail.

S/LaShawn R. Saulsberry
Case Manager